## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**RONALD K. PACK,**

     **Petitioner,**

**v.**

                            **Case No. 19-3246-DDC**

**JAMES HEIMGARTNER,**

     **Respondent.**

## MEMORANDUM AND ORDER

This matter comes before the court on prisoner Ronald Pack's pro se[1] Petition for Writ of Habeas Corpus (Doc. 1).  The State of Kansas has filed an Answer and Return (Doc. 17), and Mr. Pack has filed a Traverse (Doc. 22).  Under 28 U.S.C. § 2254, Mr. Pack attacks his two state court criminal convictions for raping a 9-year-old girl.  He asserts eight grounds for relief ranging from ineffective assistance of counsel to improper jury instructions.  For reasons explained below, none of the asserted grounds warrant relief, and so the court denies his Petition.

### I.      Factual Background

The Kansas Court of Appeals summarized the facts of Mr. Pack's state court convictions as follows:

> On July 7, 2011, the State charged Pack with two counts of rape of E.F.  Prior to trial, Pack filed a motion to suppress claiming his consent to search his house was involuntary.  He also filed a motion to have a psychological evaluation conducted on E.F. because of questions about her credibility.  The trial court held a full evidentiary hearing and denied both motions.

---

[1]     Because Mr. Pack proceeds pro se, the court construes his pleadings liberally.  *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (holding that courts must construe pro se litigant's pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers).  But, under this standard, the court does not assume the role as Mr. Pack's advocate.  *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).  The court does not construct arguments for Mr. Pack or search the record.  *Id.*

Pack does not challenge the sufficiency of the facts in this case, but he continues to maintain his innocence. Pack and his longtime girlfriend, Patricia Wylie, lived across the street from Scott and Lisa Cyr. Lisa had two daughters from a previous marriage, 9-year-old E.F. and 6-year-old A.F. Wylie's daughter Rhonda and Rhonda's 6-year-old daughter, Gabriel, often stayed with Pack and Wylie. E.F. and A.F. called Pack, "Ronnie", and called Wylie, "grandma." E.F. testified they were both like grandparents. E.F. and A.F. spent a lot of time at Pack's house playing with Gabriel.

E.F. testified that in January 2011, Pack told E.F. to come inside his house while A.F. and Gabriel continued to play in the snow. Pack told E.F. to come into his bedroom because he had a checker board game. Pack told E.F. to lie down and take off her snow clothes because she was tracking snow in the house. Pack took off E.F.'s pants and took something out of the night stand. E.F. testified it was a massager-type of thing and he plugged it in and it rumbled. E.F. testified that Pack put the massager inside her private area. He would take it out and put oil on it with a Q-Tip and then put it back inside her. E.F. testified Pack was wearing a robe, but that she could see his private area.

E.F. testified this occurred a second time in March or April 2011. She was wearing shorts and a T-shirt this time. E.F. and A.F. were playing with Gabriel again. E.F. said she was talking with Pack in his kitchen and she was scratching her back. Pack offered to put lotion on her back and told her to go into his bedroom. Pack had E.F. lay down in the same manner. E.F. testified she was scared and Pack told her that if she told anyone, they would both be in a lot of trouble. E.F. said he used the massager again and did the same thing to her except that he did not use any oils this time. E.F. said Pack was wearing a robe again and that she could see his private area. E.F. told Shawnee County Sheriff's Detective Keith Allen that during the second time, Pack told her he was doing an experiment to "try and get [her] toes to curl." E.F. testified the situations would stop when she got up and left the bedroom. E.F. testified it was not until July 2011 that she told her mom about what Pack had done because she was afraid for her sister when she saw Pack whispering to A.F. She did not want the same thing to happen to A.F.

Lisa and Scott called the police, and Wichita Police Officer Jonathan Estrada spoke with E.F. E.F. was taken to the hospital for a sexual assault examination and an interview with Det. Allen at the Wichita Police station. At trial, E.F. identified the massager and oils that Pack used on her. E.F. was cross-examined at trial concerning inappropriate things she may have learned from the neighborhood girl, E.V. Lisa Cyr had told E.F. she was not allowed to spend time with E.V. anymore.

Karen Wilson-Diehl, a forensic nurse examiner, testified concerning E.F.'s examination and E.F.'s statements that Pack had put a massager inside her vagina and had rubbed oils on the outside of her vagina. She said it happened in January 2011 and again in March or April 2011. Det. Allen also testified to E.F.'s

statements concerning the type and date of Pack's contact with E.F. and use of the massager. Shelly Steadman testified concerning the DNA evidence received from both E.F. and Pack. Steadman testified that from the evidence obtained from the massager, E.F. could not be excluded as a major contributor to the DNA profile.

Pack presented the testimony of Dr. Robert W. Burnett to challenge the interviews and examinations performed on E.F. The defense called Jay D. Sutter to discuss Pack's work record during the time of the offenses. The defense called Michael Baker, Pack's co-worker, to testify that Pack was a person with high integrity and how he would trust Pack with any member of his family. Ronda Hogan, Wylie's daughter, testified about her and her daughter Gabriel's association with Pack and how Gabriel played with E.F. and A.F. all the time. Wylie testified on behalf of Pack and their long-term relationship. Wylie testified about their sexual relationship and Pack's erectile dysfunctional problems for several years prior to 2011. Wylie testified about the vibrators and massagers they had in their bedroom. Wylie also testified concerning her consent to search the house and how it was conducted by the police officers.

The jury convicted Pack on both counts. His motion for a new trial and motion for acquittal were denied. The trial court also denied Pack's request for a departure to the sentencing grid and then a durational departure of that sentence. The court also denied Pack's motion to find his presumed sentence under Jessica's Law to be unconstitutional under the constitutions of both Kansas and the United States. The court sentenced Pack to two life sentences (hard 25) in accordance with Jessica's Law, [Kan. Stat. Ann. §] 21-4643. Enacted in 2006, Jessica's Law provided a term of imprisonment for life with a mandatory minimum term of imprisonment of not less than 25 years for the rape of a child under 14 years of age. [Kan. Stat. Ann. §] 21-3502; [Kan. Stat. Ann. §] 21-4643.

*State v. Pack*, 345 P.3d 295 (Table), No. 110,467, 2015 WL 1513974, at *1–2 (Kan. Ct. App.

Mar. 27, 2015) (unpublished decision).

Mr. Pack appealed his conviction to the Kansas Court of Appeals. In his direct appeal,

Mr. Pack raised seven issues: (1) the trial court erred in denying his motion for a psychiatric

evaluation of the victim; (2) the trial court erred in denying his motion to suppress evidence

because his consent to a search was involuntary; (3) the trial court erred when allowing a verdict

form listing the option of guilty above the option of not guilty; (4) the trial court erred by not

giving a jury instruction on avoiding sympathy and favoritism; (5) these errors combined to

result in cumulative error; (6) the trial court erred in denying a motion to declare Jessica's Law

unconstitutional; and (7) the trial court erred in denying a motion for durational departure.  *Id.* at *2–15; *see also* Br. of Appellant, *State v. Pack*, No. 13-110467-A (Kan. Ct. App. June 13, 2014), 2014 WL 2815703, at *1.  The Kansas Court of Appeals affirmed Mr. Pack's convictions.  *Pack*, 2015 WL 1513974, at *1.

Mr. Pack then sought review from the Kansas Supreme Court on all the same issues.  Appellant's Pet. for Review at 1, *State v. Pack*, No. 110467 (Kan. Apr. 27, 2015).  The Kansas Supreme Court denied review.  Pet. for Review (re: opinion), *State v. Pack*, No. 110467 (Kan. Sept. 23, 2015).

Mr. Pack then filed a motion for post-conviction relief under Kan. Stat. Ann. § 60-1507 ("the § 60-1507 motion").  Mot., *Pack v. Kansas*, No. 16cv1937 (Sedgwick Cnty. Dist. Ct. Aug. 24, 2016).  His motion raised three issues:  (1) ineffective assistance of counsel; (2) jury instruction errors; and (3) prosecutorial error.  *Id.* at 3.1, 3.29, 3.36.  The § 60-1507 motion contained 33 separate claims within these three general issues.  The Sedgwick County District Court held a preliminary hearing on Mr. Pack's § 60-1507 motion and denied the motion.  Order Denying Relief Under K.S.A. 60-1507, *Pack v. Kansas*, No. 16cv1937 (Sedgwick Cnty. Dist. Ct. July 11, 2017).  Mr. Pack appealed this ruling to the Kansas Court of Appeals.  Notice of Appeal, *Pack v. Kansas*, No. 16cv1937 (Sedgwick Cnty. Dist. Ct. Aug. 2, 2017).  Mr. Pack raised the same issues presented in his § 60-1507 motion.  Br. of Appellant at 1, *Pack v. State*, No. 17-118,581-A (Kan. Ct. App. Apr. 9, 2018).  On January 25, 2019, the Kansas Court of Appeals affirmed the trial court's decision denying Mr. Pack's § 60-1507 motion.  *Pack v. State*, 433 P.3d 201 (Table), No. 118,581, 2019 WL 325140 (Kan. Ct. App. Jan. 25, 2019).

On February 25, 2019, Mr. Pack filed a summary petition for review with the Kansas Supreme Court, and presented the following issue:  "Did the Court of Appeals err in affirming

the district court's denial of evidentiary hearing on Pack's 20 claims of ineffective assistance of counsel, 4 claims of jury instruction error, and 7 claims of prosecutorial error?" Rule 8.03A Summ. Pet. for Review at 1, *Pack v. State*, No. 118,581 (Kan. Feb. 25, 2019). The Kansas Supreme Court denied review. Order, *Pack v. State*, No. 118,581 (Kan. Sept. 27, 2019).

Mr. Pack then sought federal review of his conviction in our court, filing his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 on December 5, 2019. Doc. 1. The Petition asserts eight grounds for relief summarized as:

1. The trial court erred in denying Mr. Pack's motion for a psychiatric evaluation of the victim.

2. The trial court erred in denying Mr. Pack's Motion to Suppress.

3. The trial court erred in giving the jury a verdict form that violated Mr. Pack's right to the presumption of innocence.

4. The trial court erred when refusing to give a jury instruction on avoiding sympathy and favoritism.

5. A combination of these errors resulted in cumulative error violating Mr. Pack's constitutional right to a fair trial.

6. Mr. Pack received ineffective assistance of counsel.

7. The trial court erred in several other jury instructions that denied Mr. Pack his due process rights.

8. Several incidents of prosecutorial misconduct violated Mr. Pack's due process rights.

Doc. 1 at 6–7, 10–11, 13, 15, 42, 51. The court considers these eight claims under the governing legal standard detailed in the following section.

## II.      Legal Standard Governing Habeas Corpus Petitions

A federal court reviews a state prisoner's challenge to matters decided in state court proceedings under the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *Lockett v.*

*Trammell*, 711 F.3d 1218, 1230 (10th Cir. 2013).  This act "requires federal courts to give significant deference to state court decisions" on the merits.  *Id.*  A federal court may not grant a state prisoner habeas relief for "any claim that was adjudicated on the merits in State court proceedings" unless the prisoner can show one of the following two things:  (1) that the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) that the adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).

The phrase "'[c]learly established [Federal] law'" refers to Supreme Court holdings, but not dicta.  *Lockett*, 711 F.3d at 1231 (quoting *House v. Hatch*, 527 F.3d 1010, 1015 (10th Cir. 2008)).  An adjudication is "'contrary to' a clearly established law if it 'applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court has] done on a set of materially indistinguishable facts.'"  *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 694 (2002)).  And, an adjudication is "an 'unreasonable application' of clearly established federal law if it 'identifies the correct governing legal principle . . . but unreasonably applies that principle to the facts of petitioner's case.'"  *Id.* (quoting *Wiggins v. Smith*, 539 U.S. 510, 520 (2003)).  To determine whether a state court unreasonably applied clearly established precedent, the court considers the degree of specificity expressed by the governing legal rule.  *Frost v. Pryor*, 749 F.3d 1212, 1223 (10th Cir. 2014).  "The more general the rule . . . the more leeway [state] courts have in reaching outcomes in case-by-case determinations."  *Id.* (citations and internal quotation marks omitted).  Federal habeas relief is appropriate "only when the petitioner shows there is *no possibility* fairminded jurists could

disagree that the state court's decision conflicts with [the Supreme] Court's precedents." *Id.* (citation and internal quotation marks omitted).

A factual determination "made by a State court shall be presumed to be correct" unless petitioner presents clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see also Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003) ("[A] decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless [it is] objectively unreasonable in light of the evidence presented in the state-court proceeding." (citations omitted)). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.    Analysis

The State asks the court to dismiss certain claims of Mr. Pack's Petition on procedural grounds and other claims on the merits. For reasons explained below, the court dismisses all eight grounds that the Petition asserts. The court addresses each ground, in turn, below.

### A.    <u>Ground One</u>:  Did the Trial Court Err by Denying the Motion for a Psychiatric Evaluation of the Victim?

First, Mr. Pack asserts that the trial court erred by denying his motion for a psychiatric evaluation of the victim. Doc. 1 at 6. He claims that the victim had a history of lying and exaggerating facts, had spent time with an older girlfriend who shared information about human sexuality with her, and couldn't distinguish fantasy from reality. *Id.* The State argues that this claim is grounded in state law and is not the type of error a federal court can consider in a habeas action under 28 U.S.C. § 2254. Doc. 17 at 12. The court agrees with the State.

The Supreme Court has held "many times that 'federal habeas corpus relief does not lie for errors of state law.'" *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)). Section 2254 does not allow a "federal habeas court to reexamine

7

state-court determinations on state-law questions." *Id.* at 67–68. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the constitution, laws, or treaties of the United States." *Id.* at 68.

In Kansas, when a court is presented with the question whether to order a psychiatric evaluation of a victim in a sexual abuse case, the defendant must show the totality of the circumstances demonstrate compelling reasons for the evaluation. *Pack*, 2015 WL 1513974, at *3 (citing *State v. Berriozabal*, 243 P.3d 352, 356, Syl. ¶ 4 (Kan. 2010)). Kansas courts employ a six-factor test to determine whether compelling reasons exist. *See State v. McCune*, 330 P.3d 1107, 1231 (Kan. 2014) (discussing factors that supported trial court's decision to deny psychiatric evaluations). This six-factor test comes from Kansas case law. *Id.* (citing *Berriozabal*, 243 P.3d at 356). And, the Kansas Court of Appeals applied this very test in Mr. Pack's direct appeal, *Pack*, 2015 WL 1513974, at *3, concluding that "the trial court did not abuse its discretion in denying [Mr.] Pack's motion to compel a psychiatric evaluation." *Id.* at *4.

Thus, the decision to deny Mr. Pack's motion for a psychiatric evaluation of the victim was grounded in state law, not federal law. So, Mr. Pack's first ground for relief doesn't assert an "unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). For this reason, the court denies Mr. Pack's first claim for federal habeas relief.

**B.   Ground Two:  Did the Trial Court Err by Denying Mr. Pack's Motion to Suppress?**

Second, Mr. Pack argues the trial court erred when it denied his Motion to Suppress. Doc. 1 at 7–8. Mr. Pack alleges that police unlawfully coerced his consent to search his home,

and thus the search was involuntary.  *Id.* at 7.  He argues that the trial court should have granted

his motion and suppressed the evidence seized during the search as fruit of the poisonous tree.

*Id*.  The State argues that Fourth Amendment claims of this kind are barred on federal habeas

corpus review.  Doc. 17 at 13.  Again, the court agrees with the State.

The Supreme Court has held:  "[W]here the State has provided an opportunity for full and

fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas

corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was

introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 482 (1976).  The Tenth Circuit has

interpreted the "opportunity for full and fair consideration" to include the procedural opportunity

to raise a Fourth Amendment claim, the full and fair evidentiary hearing contemplated by

*Townsend v. Sain*, 372 U.S. 293 (1963), and the state court's application of the correct and

controlling constitutional standards.  *Gamble v. Oklahoma*, 583 F.2d 1161, 1164–65 (10th Cir.

1978).  But "a federal court is not precluded from considering Fourth Amendment claims in

habeas corpus proceedings where the state court wil[l]fully refuses to apply the correct and

controlling constitutional standards."  *Id.* at 1165.

Mr. Pack never argues that the state courts deprived him of a full and fair opportunity to

litigate his claim.  And, the record here shows just the opposite.  The state trial court held an

evidentiary hearing on Mr. Pack's Motion to Suppress.  Tr. of Pretrial Mot. at 7, 32–71, *State v.

Pack*, No. 11-CR-1954 (Sedgwick Cnty. Dist. Ct. Mar. 8, 2013).  At its conclusion, the trial court

denied the motion on the record.  *Id.* at 70–71.  Mr. Pack then raised this issue in his direct

appeal to the Kansas Court of Appeals.  Br. of Appellant, *State v. Pack*, No. 13-110467-A (Kan.

Ct. App. June 13, 2014), 2014 WL 2815703, at *7–12.  The Kansas Court of Appeals reviewed

this claim and found "no error in the trial court's ruling on the motion to suppress."  *Pack*, 2015

WL 1513974, at *5.  Federal habeas relief thus is not warranted on this claim.  The record shows that Mr. Pack had a full and fair opportunity to litigate his Fourth Amendment claim in the Kansas state courts.  He was afforded a procedural opportunity to raise this claim, he was provided an evidentiary hearing on his claim, and he identifies no place in the record where the Kansas state courts applied an incorrect constitutional standard to decide his Motion to Suppress.  Thus, Mr. Pack is not entitled to any federal habeas relief on his Fourth Amendment claim.  The court denies Mr. Pack's second ground for relief.

      **C.**   <u>**Ground Three**</u>**:  Did the Verdict Forms Violate Mr. Pack's Constitutional Rights?**

Next, Mr. Pack argues that the state trial court "erred by allowing a verdict form that listed the guilty option above the not guilty option[.]"  Doc. 1 at 10.  He asserts that the two verdict forms presented "a nebulous ambiguity" violating his due process rights.  *Id.*  In response, the State argues Mr. Pack fails to show that the verdict forms produced any prejudicial error.  Doc. 17 at 14–17.  The court agrees.

"In a habeas relief proceeding attacking a state court judgment based on an erroneous jury instruction, a petitioner has a great burden."  *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (citations omitted).  A court cannot set aside a state conviction on federal habeas review "'on the basis of erroneous jury instructions unless the errors had the effect of rendering the trial so fundamentally unfair as to cause a denial of a fair trial in the constitutional sense.'"  *Lujan v. Tansy*, 2 F.3d 1031, 1035 (10th Cir. 1993) (quoting *Shafer v. Stratton*, 906 F.2d 506, 508 (10th Cir. 1990)).

The record fails to support Mr. Pack's assertion that the verdict forms were ambiguous or violated his due process rights.  The record shows that the state trial court instructed the jury on the contents of the two verdict forms.  Tr. of Jury Trial Hearing Vol. III at 152–153, *State v.*

*Pack*, No. 11 CR 1954 (Sedgwick Cnty. Dist. Ct. Apr. 18 & 19, 2013).  The verdict forms don't include any erroneous instructions about the State's burden of proof or Mr. Pack's presumption of innocence.  To the contrary, the court accurately instructed the jury on the State's burden of proof and Mr. Pack's presumption of innocence in Instruction No. 6.  *Id.* at 151.  It read:

> The State has the burden to prove Mr. Pack is guilty.  Mr. Pack is not required to prove he is not guilty.  You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.  The test you must use in determining whether Mr. Pack is guilty or not guilty is this.  If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find Mr. Pack not guilty.  If you have no reasonable doubt as to the truth of each of the claims required to be provided by the State, you should find Mr. Pack guilty.

*Id.*  Also, Mr. Pack's counsel specifically referred to Instruction No. 6 in his closing argument. *Id.* at 166.  He asked the jury to turn to that Instruction and look at it.  *Id.*  Then, he read the Instruction to the jury and emphasized that it required the State "to eliminate every reasonable doubt."  *Id.*

After the jury returned guilty verdicts on both verdict forms, the court asked the presiding juror whether the verdicts the bailiff had read to the court were the verdicts of the jury.  *Id.* at 200.  The presiding juror answered, "Yes.  It was."  *Id.*  The court then polled the jury, asking each juror whether the verdicts that the bailiff had announced were indeed each juror's verdicts. *Id.* at 200–02.  Each juror answered, "Yes."  *Id.* at 201–02.

Nothing in this record shows that the verdict forms contained any ambiguity that confused the jury or erroneously instructed the jury on the law.  Just the opposite, the trial court record shows that the court correctly instructed the jury on the burden of proof and the presumption of innocence.  And, the court must presume that the jury followed these instructions.  *Kansas v. Carr*, 577 U.S. 108, 124 (2016) ("We presume the jury followed" the instructions given by a trial court); *Evans v. Michigan*, 568 U.S. 313, 328 (2013) ("[A] jury is

presumed to follow its instructions." (citation and internal quotation marks omitted)).  Thus, Mr. Pack hasn't shouldered his burden to show that the verdict forms rendered his trial so fundamentally unfair that he was denied a fair trial.

Also, the court recognizes that Mr. Pack raised this same issue before the Kansas Court of Appeals.  *Pack*, 2015 WL 1513974, at *5.  He argued that "the verdict form denied his right to a presumption of innocence because it placed the option of guilty first and the option of not guilty underneath the guilty option."  *Id.*  The Kansas Court of Appeals rejected the argument, finding it was "without merit."  *Id.*  It explained:

> Two cases decided by our Kansas Supreme Court have rejected a similar argument concerning the verdict form—PIK Crim. 4th 68.060 and PIK Crim. 4th 68.070 provides similar forms.  Our Supreme Court has approved a similar verdict form.  *See State v. Wilkerson*, 278 Kan. 147, 158–59, 91 P.3d 1181 (2004); *State v. Wesson*, 247 Kan. 639, 652, 802 P.2d 574 (1990), *cert. denied* 501 U.S. 1236 (1991) (where guilty blank preceded not guilty blank, no prejudice to accused). Pack has not attempted to distinguish either *Wilkerson* or *Wesson* and we are duty bound to follow those decisions.  *See State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014) (The Court of Appeals is duty bound to follow Kansas Supreme Court precedent absent some indication that the court is departing from its earlier position.).  Further, a defendant is presumed innocent and the jury was so instructed.  The purpose of the trial is to determine if the accused is guilty.  Jury Instruction No. 6 specifically instructed the jury:  "The State has the burden to prove Mr. Pack is guilty.  Mr. Pack is not required to prove he is not guilty.  You must presume that he is not guilty unless you are convinced from the evidence that he is guilty."  The verdict form was not erroneous.

*Id.*

In sum, nothing in the record suggests that the jury found the verdict form ambiguous or confusing.  And, Mr. Pack has failed to shoulder his burden to show that the verdict forms rendered his trial fundamentally unfair.  The court thus denies relief on the third ground asserted in Mr. Pack's Petition.

**D.  Ground Four:  Did the Trial Court Err By Refusing to Give a Jury Instruction About Avoiding Sympathy and Favoritism?**

Mr. Pack next claims the trial court erred by not giving the jury his proposed instruction about avoiding sympathy and favoritism.  Doc. 1 at 11.  Mr. Pack asserts that the trial court erred by refusing to give the instruction because "the jury was influenced by the sympathy of the victim," causing prejudice to Mr. Pack.  *Id.*  The State responds that this claim for relief is grounded in state law, and thus, it fails to raise a claim for federal habeas relief.  Doc. 17 at 18–20.  The court once again agrees with the State.

As previously discussed, a federal habeas court cannot "reexamine state-court determinations on state-law questions."  *Estelle*, 502 U.S. at 67–68.  And, as the Supreme Court has explained, a jury instruction that is "allegedly incorrect under state law is not a basis for habeas relief."  *Id.* at 71–72.  "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient[.]"  *Id.* at 72.  Instead, for a court to grant federal habeas relief, a petitioner must show that the jury instructions violated federal law.  28 U.S.C. § 2254(d)(1).  Mr. Pack cites no federal law or precedent—and the court hasn't identified any—that recognizes a right to a non-sympathy or favoritism jury instruction.

Since no federally recognized right is at issue, "[t]he only question for [a federal habeas court] is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'"  *Estelle*, 502 U.S. at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).  A due process violation may occur in "in rare circumstances" when "a determination of state law" is "'so arbitrary or capricious as to constitute an independent due process . . . violation[.]'"  *Cummings v. Sirmons*, 506 F.3d 1211, 1237 (10th Cir. 2007) (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

Mr. Pack fails to show that the trial court's refusal to give his requested jury instruction was arbitrary or capricious such that it violated his due process rights. Mr. Pack's claim appears to rely on PIK Crim. 3d 51.07—formerly in the Kansas Pattern Instructions—which provides, "'[y]ou must consider this case without favoritism or sympathy for or against either party. Neither sympathy nor prejudice should influence you.'" *Pack*, 2015 WL 1513974, at *6 (quoting PIK Crim. 3d 51.07). As the Kansas Court of Appeals noted, PIK Crim. 3d 51.07 "has been removed from the Pattern Instructions for Kansas and is disapproved for general use." *Id.* (citing *State v. Baker*, 135 P.3d 1098, 1106 (Kan. 2006)). Instead, under Kansas law, "[a] district court should give the no-sympathy instruction only under very unusual circumstances where the court believes that the jury may be influenced by sympathy or prejudice." *Id.* (citing *State v. Williams*, 329 P.3d 420, 424–25 (Kan. 2014)).

The Kansas Court of Appeals analyzed whether Mr. Pack's case presented a "very unusual circumstance[ ]" in which the trial court erred by refusing to give a no-sympathy instruction. *Id.* It found no error. *Id.* The Kansas court concluded that the facts of the case were not "sufficiently unusual to require the district court to give a no-sympathy instruction" and that, "as a whole, the instructions given by the district court fairly and accurately instructed the jury on the law and instructed the jury to weigh the credibility of each witness and base its verdict on the evidence admitted and the law given in the instructions." *Id.* The Kansas court's ruling on this issue of Kansas state law binds this court in its federal habeas review. *Bradshaw v. Ritchey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."). And, on this record, the court can't conclude that the refusal to give the no-sympathy instruction was "so arbitrary or capricious" that

14

it rises to the level of a due process violation.  *Lewis*, 497 U.S. at 780.  Thus, the court denies Mr.

Pack's habeas claim on this fourth ground.

### E.  <u>Ground Five</u>:  Did the Alleged Errors Collectively Create Cumulative Error Violating Mr. Pack's Constitutional Rights?

Mr. Pack next claims that the combination of the four alleged errors already discussed

collectively imposed cumulative error.  Doc. 1 at 13.  He asserts that his cumulative error

argument "was never argued or acknowledged by the Appellate Courts."  *Id.*  That's just wrong.

The Kansas Court of Appeals addressed Mr. Pack's cumulative error argument in his direct

appeal, finding that none of Mr. Pack's "alleged errors have any merit," so "there is no error to

cumulate."  *Pack*, 2015 WL 1513974, at *6.  Mr. Pack doesn't advance any argument or

evidence suggesting that the Kansas Court of Appeals's resolution of his cumulative error

argument "resulted in a decision that was based on an unreasonable determination of the facts in

light of the evidence presented in the State court proceeding."  28 U.S.C. 2254(d)(2).  So, he's

not entitled to any relief under that subsection of § 2254.

As discussed, the other ground for § 2254 relief requires Mr. Pack to show an

"unreasonable application of, clearly established Federal law, as determined by the Supreme

Court of the United States[.]"  28 U.S.C. § 2254(d)(1).  In the federal habeas context,

"cumulative error analysis applies only to cumulative constitutional errors."  *Young v. Sirmons*,

551 F.3d 942, 972 (10th Cir. 2008).  The cumulative error analysis "'aggregates all errors found

to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such

that collectively they can no longer be determined to be harmless.'"  *Id.* (quoting *Brown v.

Sirmons*, 515 F.3d 1072, 1097 (10th Cir. 2008)).  A court will grant relief "under cumulative

error doctrine 'only when the constitutional errors committed in the state court trial so fatally

infected the trial that they violated the trial's fundamental fairness.'"  *Littlejohn v. Trammel*, 704

F.3d 817, 868 (10th Cir. 2013) (quoting *Matthews v. Workman*, 577 F.3d 1175, 1195 n.10 (10th Cir. 2009)).

Here, Mr. Pack fails to show that his state court convictions suffer from any constitutional errors.  So, there are no errors to accumulate to support a cumulative error theory.  Thus, the court denies Mr. Pack's fifth ground for habeas relief.

Mr. Pack's fifth ground also appears to assert two other claims.  He argues constitutional and due process violations because "there was insufficient evidence, and the charges were all based on speculation, with no physical proof, only the testimony of the victim with a past history of inconsistent fabrication, who lied against" Mr. Pack.  Doc. 1 at 13.  Also, he alleges that "Appellate Courts diverted cumulative error, by the district court's denial of a downward departure, which had no relationship to the cumulative error, but used the departure argument as a tactical ploy to divert attention away from the cumulative error argument which was never argued or acknowledged by the Appellate Court."  *Id.*

To the extent Mr. Pack challenges the sufficiency of the evidence, he has not exhausted this claim, it is procedurally defaulted, and it is barred from federal habeas review.  The court explains why in Part III.F.  *See infra* note 3.

To the extent Mr. Pack argues that the trial court erred in denying a departure sentence, the Kansas Court of Appeals addressed this argument in his direct appeal and rejected it.  The Court of Appeals recognized that Jessica's Law, codified at Kan. Stat. Ann. § 21-4643,[2] requires a court to impose a life sentence with a mandatory minimum of not less than 25 years on a first-time offender who is 18 years of age or older and convicted of raping a child under the age of 14

---

[2]        The Kansas Legislature has repealed this statute.  In its place, it enacted Kan. Stat. Ann. § 21-6627.  Kan. Stat. Ann. § 21-6627 contains the same sentencing requirements and mitigating factors that the Kansas Court of Appeals discussed when it applied Kan. Stat. Ann. § 21-4643 to Mr. Pack's sentence.

"unless, 'the judge finds substantial and compelling [reasons], following a review of mitigating circumstances, to impose a departure.'" *Pack*, 2015 WL 1513974, at \*13 (quoting Kan. Stat. Ann. §§ 21-4643(a)(1)(B), (d)).  The trial court denied Mr. Pack's departure motion under this statute.  *Id.* at \*14.  In reaching its decision, the trial court discussed various mitigating factors and explained "those are all factors that the Court considers, but in this kind of situation those do not rise to the level of substantial and compelling factors to depart in this case."  *Id.* (internal quotations omitted).  Based on its review of the trial court's decision, the Court of Appeals concluded:

> It cannot be said that no reasonable person would agree with the district court's decision to deny [Mr.] Pack's departure motion, given he twice raped 9-year-old E.F.  Therefore, [Mr.] Pack has failed to establish that the district court abused its discretion in considering the mitigating circumstances to determine whether substantial and compelling reasons warranted a departure.  The trial court did not err by denying [Mr.] Pack's motion for a departure sentence.

*Id.* at \*15.  Mr. Pack advances no argument or evidence showing that the trial court's refusal to impose his requested sentence departure (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) that it "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(1)–(2).  So, Mr. Pack is not entitled to habeas relief on his downward departure argument.

For all these reasons, the court denies the fifth ground for relief that Mr. Pack asserts in his § 2254 Petition.

**F.  <u>Grounds Six, Seven, and Eight</u>:  Are Mr. Pack's Other Grounds for Relief Barred by Procedural Default?**

Mr. Pack's final three grounds for habeas relief—ineffective assistance of counsel, prosecutorial misconduct and "[e]rroneous, or improper jury instructions"—all require the same procedural default analysis.  Doc. 1 at 15, 42, 51.  Mr. Pack alleges that he received ineffective assistance of counsel violating his constitutional rights.  *Id.* at 15.  He lists 20 separate ways in which, he alleges, his trial counsel represented him ineffectively, producing a violation of his due process rights.  *Id.* at 16–41.  Also, Mr. Pack alleges six instances of prosecutorial misconduct resulting in due process violations.  *Id.* at 51–62.  Last, Mr. Pack claims that the trial court gave "[s]everal [e]rroneous, or improper jury instructions" that violated his "[r]ight to an impartial jury and due process . . . ."  *Id.* at 42; *see also id.* at 43–49 (describing the instructions that Mr. Pack asserts were error).  Mr. Pack asserted each of these three arguments in his state collateral appeal under Kan. Stat. Ann. § 60-1507.  Br. of Appellant at 1, *Pack v. State*, No. 17-118,581-A (Kan. Ct. App. Apr. 9, 2018).

The State argues that the procedural default rules preclude federal habeas review of Mr. Pack's last three grounds for relief.  Doc. 17 at 24–31.  Procedural default occurs when a petitioner fails to exhaust his state court remedies as 28 U.S.C. § 2254(b)(1) requires.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."); *id.* at 848 (explaining that courts consider exhaustion first, then ask whether the petitioner "has *properly* exhausted those remedies, *i.e.*, whether he has fairly presented his claims to the state courts").  To exhaust his state court remedies, a § 2254 petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Id.* at 845.  So, here, Mr. Pack must have provided an

opportunity for the Kansas district court, court of appeals, and supreme court to hear his claims before seeking habeas relief from a federal court. *Blaurock v. Kansas*, No. 15-cv-03274, 2016 WL 7157581, at *4 (D. Kan. Dec. 8, 2016).

Procedural default rules apply when:  "(1) a state court clearly dismisses an issue on a state procedural ground that is both independent of federal law and adequate to support the judgment;" or (2) "the petitioner fails to exhaust available state remedies and would be procedurally barred from presenting the issue if it was brought in state court." *Bowles v. Kansas*, No. 15-3049-JTM, 2016 WL 3759508, at *2 (D. Kan. July 14, 2016); *see also Coleman v. Thompson*, 501 U.S. 722, 729–30, 735 n.1 (1991).  The first category bars "federal habeas" relief when state courts decline "to address a prisoner's federal claims because the prisoner ha[s] failed to meet a state procedural requirement." *Coleman*, 501 U.S. at 729–730.  The Supreme Court has explained why:  "Because [a federal court] has no power to review a state law determination that is sufficient to support the judgment, resolution of any independent federal ground for the decision could not affect the judgment and would therefore be advisory." *Id.* at 729 (citing *Herb v. Pitcairn*, 324 U.S. 117, 125–126 (1945)).  The State argues that the Mr. Pack's final three claims fall into this first category.[3]  The court agrees.

---

[3]     As discussed above, Mr. Pack's fifth ground for relief asserts a cumulative error theory, but also appears to assert a challenge to the evidence's sufficiency.  This claim falls into the second category of procedural default that *Coleman v. Thompson* describes.  Mr. Pack never asserted this claim either in his direct appeal or his Kan. Stat. Ann. § 60-1507 motion.  And, these claims are untimely now under Kansas law. *See Frost v. Pryor*, 749 F.3d 1212, 1231 (10th Cir. 2014) (setting out the Kansas requirements for asserting timely claims on a direct appeal of a criminal conviction or a § 60-1507 motion for collateral post-conviction relief).  So, Mr. Pack has "failed to exhaust state remedies and the court to which [Mr. Pack] would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." *Coleman*, 501 U.S. at 735 n.1.  The same analysis applies to any of the 20 claims of ineffective assistance or six claims of prosecutorial error that Mr. Pack asserts in his § 2254 motion that he never presented in the Kansas courts.  To the extent any of these claims are different than the ones he presented in his § 60-1507 motion, the newly asserted claims are procedurally barred. The Tenth Circuit refers to this type of default as "anticipatory procedural bar." *Frost*, 749 F.3d at 1231 (citation and internal quotation marks omitted).  "There are two circumstances where a federal court may nevertheless consider claims subject to an anticipatory procedural bar:  (1) if the prisoner has alleged

The Kansas Court of Appeals, in denying Mr. Pack's § 60-1507 motion on the issues of ineffective assistance of counsel and prosecutorial misconduct, held that Mr. Pack had abandoned these claims because he hadn't briefed them properly. *Pack*, 2019 WL 325140, at *1–2. For the ineffective assistance claims, the Kansas Court of Appeals noted that "except for references to the standard of review and the *Strickland* ineffective assistance of counsel test, [Mr.] Pack cites no authority suggesting the district court erred in denying his [§] 60-1507 motion." *Id.* at *1. And, for his prosecutorial misconduct claim, Mr. Pack "provide[d] neither factual nor legal support for his allegations." *Id.* at *2. In Kansas, the "[f]ailure to support a point with pertinent authority or show why it is sound despite a lack of supporting authority or in the face of contrary authority is akin to failing to brief the issue." *Id.* (citing *State v. Pewenofkit*, 415 P.3d 398, 399 (Kan. 2018)). The court found that "[b]ecause [Mr.] Pack cites no authority and does not explain how the district court erred," he had "abandoned [the ineffective assistance] issues." *Id.* at *1. It also found that Mr. Pack had "abandoned his claims of prosecutorial error" because he cited "no authority suggesting the district court erred in denying his [§] 60-1507 motion" and he "failed to provide factual support for his allegations." *Id.* at *2.

Also, the Kansas Court of Appeals denied Mr. Pack's claim of improper jury instructions on procedural grounds. The Kansas Court of Appeals ruled that "[t]hese issues should have been raised on direct appeal." *Id.* "As a result, the [state] district court did not err when it denied these claims." *Id.*

---

sufficient 'cause' for failing to raise the claim and resulting 'prejudice' or (2) if denying review would result in a fundamental miscarriage of justice because the petitioner has made a 'credible' showing of actual innocence." *Id.* (citing *Coleman*, 501 U.S. at 750 (further citations omitted)). As discussed later in this section of the court's Order, Mr. Pack hasn't made the showing necessary to bring his claims within any of the exceptions to the anticipatory procedural bar rule.

Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. This rule applies whether the state law ground is substantive or procedural." *Coleman*, 501 U.S. at 729 (internal citations omitted). So, here, the procedural default rules preclude the court from reviewing Mr. Pack's ineffective assistance of counsel, prosecutorial misconduct, and improper jury instruction claims unless he can demonstrate either: (1) cause and actual prejudice, or (2) "that he is 'actually innocent.'" *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (further citation omitted)). A petitioner can satisfy the cause-and-prejudice exception by showing that some external factor impeded his efforts to comply with the state's procedural rule, *Coleman*, 501 U.S. at 753 (quoting *Carrier*, 477 U.S. at 488), and by showing that this external factor "worked to his *actual* and substantial disadvantage," *United States v. Frady*, 456 U.S. 152, 170 (1982). To satisfy the actual innocence exception, a petitioner must demonstrate "factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). This requires a petitioner to show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* (citation and internal quotation marks omitted).

Mr. Pack makes conclusory claims of actual innocence. *See* Doc. 22 at 2 ("The petitioner is actually innocent of the two counts of rape of E.F."); *see also id.* at 19 ("[T]he petitioner was actually innocent of the crime[.]"). But, he provides no substance to support those conclusory assertions. Thus, Mr. Pack fails to shoulder his burden to show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (citation and internal quotation marks omitted).

Also, Mr. Pack doesn't present any argument or evidence that would allow the court to find cause and actual prejudice sufficient to overcome his procedural default. Mr. Pack's Traverse argues the cause-and-prejudice exception exists in the form of ineffective assistance of counsel. Doc. 22 at 16. Mr. Pack asserts he "is fighting against procedural problems . . . completely caused by State Appointed Counsels." *Id.* But, with Mr. Pack's procedural default on his ineffective assistance of counsel and prosecutorial misconduct claims, the default occurred at postconviction proceedings. *Pack*, 2019 WL 325140, at *1. And, Mr. Pack has no constitutional right to an attorney for state postconviction proceedings and thus "cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Coleman*, 501 U.S. at 752 (first citing *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); then citing *Wainwright v. Torna*, 455 U.S. 586, 587 (1982)). Instead, "the petitioner bears the risk in federal habeas for all attorney errors made in the course of the representation" in the state postconviction proceedings. *Id.* at 754. Thus, Mr. Pack cannot rely on ineffective assistance of counsel to excuse the procedural default of his ineffective assistance of counsel and prosecutorial misconduct claims.

Finally, Mr. Pack's last claim asserts improper jury instructions. He procedurally defaulted this claim because he never raised it in his direct appeal. *Pack*, 2019 WL 325140, at *2. "[I]n certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Carrier*, 477 U.S. at 488–489). The counsel's deficiency must be "so ineffective as to violate the Federal Constitution." *Id.* Thus, for "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Id.* But, "[a]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally

defaulted[.]" *Id.* at 453.  And, as discussed, Mr. Pack procedurally defaulted his separate ineffective assistance of counsel claim, and no cause exists that would allow the court to excuse that default.  Therefore, ineffective assistance of counsel cannot serve as a cause to excuse the procedural default of the improper jury instructions claim.

The Kansas Court of Appeals's decision to deny Mr. Pack's ineffective assistance of counsel, prosecutorial misconduct, and improper jury instruction claims are independent and adequate state grounds to bar federal review.  Mr. Pack has not carried his burden to show actual cause and prejudice, or that he is actually innocent.  Accordingly, the court lacks jurisdiction to review the final three grounds of Mr. Pack's Petition.

## IV.    Conclusion

As explained, the court denies the first five grounds for relief that Mr. Pack asserts in his § 2254 Petition.  And, the court dismisses the last three grounds for relief because the court lacks jurisdiction to review them.  So, Mr. Pack isn't entitled to habeas relief on any of his eight asserted claims.

## V.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2254 Cases requires the court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Without such a certificate, a petitioner may not appeal the denial of his or her habeas petition.  But, "[i]f the court denies a certificate, the [petitioner] may . . . seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rules Governing Section 2254 Cases, Rule 11(a).

Under 28 U.S.C. § 2253(c)(2)–(3), the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the

court "indicate[s] which specific issue or issues satisfy [that] showing[.]"  A petitioner can satisfy this standard by demonstrating that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong[,]" or that the issues presented in the petition are "'adequate to deserve encouragement to proceed further.'"  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983), *superseded in part by* 28 U.S.C. § 2253).  And, when the court bases its ruling on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* at 478.

Here, the court concludes that it should not issue a certificate of appealability.  Nothing suggests that the court's rulings on any issue in this case are debatable or wrong, and no record authority suggests that the Tenth Circuit would resolve this case differently.  The court thus declines to issue a certificate of appealability for any of Mr. Pack's claims.  The court notes that Mr. Pack may not appeal its denial of a certificate, but he may seek a certificate of appealability from the Tenth Circuit.  *See* Rules Governing Section 2254 Cases, Rule 11(a).

**IT IS THEREFORE ORDERED BY THE COURT THAT** Ronald K. Pack's Petition for Writ of Habeas Corpus (Doc. 1) is denied and no certificate of appealability shall issue.

**IT IS SO ORDERED.**

**Dated this 2nd day of February, 2021, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**
